IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEVEN J. KISER | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:10-cv-22 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| JOHN E. POTTER, *Postmaster General,* | ) | |
| *U.S. Postal Service,* | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on the Motion for Summary Judgment (Doc. No. 44) filed by Defendant John E. Potter, Postmaster General ("Defendant"), which Plaintiff Steven J. Kiser ("Plaintiff") opposes. For the reasons that follow, the Court will **GRANT** the motion.

### II. JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b)(2).

### III. BACKGROUND

This case stems from Plaintiff's allegations that as an employee of the United States Postal Service ("USPS") working at the Altoona Post Office ("APO"), he was subject to gender discrimination, disability discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Rehabilitation Act, 29 U.S.C. § 794 ("RA"). (See Doc. No. 1). Plaintiff filed his Amended Complaint (Doc. No. 4) on May 10, 2010, and Defendant filed his Answer (Doc. No. 5) the following day. Thereafter, discovery was conducted.

On September 30, 2011, Defendant filed the instant motion for summary judgment (Doc.

1

No. 44). In support of this motion, Defendant contemporaneously filed his brief (Doc. No. 45), concise statement of material facts ("CSMF") (Doc. No. 46), and appendix of supporting exhibits (Doc. No. 47) as required by the Local Rules of the United States District Court for the Western District of Pennsylvania (the "Local Rules"). After requesting and receiving four extensions of time within which to file his response (see Doc. Nos. 49, 51, 53, and 55), Plaintiff filed his brief (Doc. No. 57) in opposition to Defendant's motion, responsive CSMF (Doc. No. 56), and over eight hundred pages of non-indexed exhibits and appendices.[1]

It is evident from the parties' filings that many of the facts in this case are not disputed. From 1994 to his resignation in 2011, Plaintiff worked as a letter carrier at the APO. (Doc. No. 46 ¶¶ 2-3; Doc. No. 56 ¶¶ 2-3). Plaintiff did not volunteer for overtime work after 4:00 p.m. without advanced notice because of his childcare responsibilities and his wife's fluctuating work schedule. (Doc. No. 46 ¶ 16; Doc. No. 56 ¶ 16). Plaintiff's supervisor instructed him to work overtime on February 16, 2007; when Plaintiff refused to do so, he was issued a Notice of Removal which was subsequently rescinded and reduced to a fourteen-day suspension. (Doc. No. 46 ¶¶ 19-20; Doc. No. 56 ¶¶ 19-20).

Plaintiff subsequently contacted the Employee Assistance Program for counseling with regards to work-related stress, anxiety, and depression. (Doc. No. 46 ¶ 29; Doc. No. 56 ¶ 29). Plaintiff's physician diagnosed him as having "Depression/work related stress" and "Anxiety[,]" and Plaintiff took off work on stress-related leave from February 16, 2007 until November 16, 2007. (Doc. No. 46 at ¶¶ 34, 42; Doc. No. 56 at ¶¶ 34, 42). Plaintiff returned to work, but was issued a Notice of Removal effective on March 1, 2011. (Doc. No. 46 at ¶ 73; Doc. No. 56 at ¶ 73). Defendant contends that the Notice of Removal was issued as a result of Plaintiff's

---

[1] The Court will discuss *infra* the procedural deficiencies of these filings and the implications of these shortcomings. See Part V A.

2

misconduct, but Plaintiff denies the allegations of misconduct and disputes Defendant's proffered basis for issuing the Notice of Removal. (Doc. No. 46 at ¶¶ 70-73; Doc. No. 56 at ¶¶ 70-73). After an arbitration hearing, the Notice of Removal was cancelled in favor of Plaintiff's voluntary resignation from the USPS effective July 2, 2011. (Doc. No. 46 at ¶ 74; Doc. No. 56 at ¶ 74).

On May 2, 2007, Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint, and his gender discrimination, disability discrimination, and retaliation claims were accepted for investigation. (Doc. No. 46 at ¶ 75; Doc. No. 56 at ¶ 75). Plaintiff subsequently initiated the action pending before this Court seeking redress of the same claims, which are now ripe for summary adjudication.

## IV. LEGAL STANDARD

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[2] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of

---

[2] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

3

material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V. DISCUSSION

Defendant contends that the Court should grant summary judgment in its favor because Plaintiff has failed to produce evidence sufficient to satisfy the *prima facie* elements of his gender discrimination, disability discrimination, and retaliation claims. Plaintiff disagrees. Before examining each claim in turn, the Court will address the procedural deficiencies of Plaintiff's summary judgment filings.

### A. Local Rules on Summary Judgment

As a preliminary matter, Defendant requests that the Court disregard the "Summary of Relevant Facts" section of Plaintiff's brief (Doc. No. 57) for failure to comply with the Local Rules. (See Doc. No. 58 at 1). In particular, Defendant argues that the section cannot be considered a counterstatement of facts for summary judgment purposes because the "lengthy 20-page narrative of factual statements . . . [is] largely argumentative, unsupported, and improperly presented." (*Id.*). The Court will discuss its Local Rules and the parties' filings before addressing this argument.

The Local Rules of this district provide explicit instructions on how litigants are to file

4

and respond to motions for summary judgment. Local Rule 56.B requires that a motion for summary judgment set forth succinctly, but without argument, the specific grounds upon which the judgment is sought. LCvR 56.B. Moreover, the motion must be accompanied by:

> (1) a CSMF setting forth in separately numbered paragraphs the facts essential to the Court's decision which the moving party contends are undisputed and material (with citations to the record to support the party's contentions);
>
> (2) a supporting memorandum addressing the applicable law and explaining why there are no genuine factual disputes to be tried and why the moving party is entitled to judgment as a matter of law; and
>
> (3) an appendix of documents referenced in the CSMF, although such documents need not be filed in their entirety as the relevant portions of each referenced document may be extracted and highlighted.

LCvR 56.B.1-3.

> To oppose a motion for summary judgment, a party must file its own:
>
> (1) responsive CSMF admitting or denying whether each fact contained in the movant's CSMF is undisputed and/or material, setting forth the basis for any denial (with supporting record citations), and setting forth in separately numbered paragraphs any other facts that are allegedly at issue and/or necessary for the Court's consideration of the summary judgment motion;
>
> (2) supporting memorandum addressing the applicable law and explaining why there are genuine factual disputes to be tried and why the moving party is not entitled to judgment as a matter of law; and
>
> (3) appendix of documents referenced in the responsive CSMF.

LCvR 56.C.1-3. This Court "strictly adhere[s] to the summary judgment procedures set forth both by the Federal and Local Rules[,]" and failure to comply can result in penalties including the Court deeming as admitted a movant's facts where the non-movant does not properly controvert them. See *Rozier v. United Metal Fabricators, Inc.*, No. 3:09-257, 2012 U.S. Dist. LEXIS 6200, *7 (W.D. Pa. Jan. 19, 2012) (citations omitted).

In the instant case, Defendant's motion, CSMF, supporting memorandum, and appendix comply with the Local Rules. (See Doc. Nos. 44-48). Plaintiff's filings, however, are replete with error. His responsive CSMF (Doc. No. 56) generally admits or denies the facts presented by Defendant, but contains extensive argument and pages of allegations instead of separately numbered paragraphs setting forth any additional pertinent facts and supporting record citations as required by Local Rule 56.C.1.c. (See e.g., Doc. No. 56 at 18-21). Plaintiff also attached over four hundred pages of exhibits to his CSMF, many of which are illegible, without any explanation of their relevance or organization. Plaintiff's supporting memorandum (Doc. No. 57): (1) gives short shrift to the discussion of applicable law and explanation of alleged factual disputes required by Local Rule 56.C.2; (2) includes a twenty-page "Summary of Relevant Facts" section littered with argument and legal conclusions;[3] (3) exceeds the twenty-five page limit that Plaintiff was apprised of by multiple Court orders (See Doc. No. 10 at 5; Doc. No. 43 at 3); and (4) includes sixteen "Appendi[ces]" totaling nearly four hundred additional pages of unorganized documents.

Presently, the Court will disregard the "Summary of Relevant Facts" section of Plaintiff's brief (Doc. No. 57) because the Local Rules provide that the responsive CSMF is the exclusive means to controvert a movant's allegedly undisputed facts. Here, Plaintiff filed a responsive

---

[3] See e.g. Doc. No. 57 at 9 ("A reasonable factfinder could dismiss the claim that the USPS management did not know that prior disciplinary incidents referenced for progressive discipline were the subject of pending appeals."); *id.* at 11 ("His condition prevented him from working . . . and constitutes a disability.").

6

CSMF, which although imperfect, disputes facts and provides supporting citations to the record. If Plaintiff wished to introduce any additional facts to oppose Defendant's motion for summary judgment, he was to do so by listing and supporting those material facts with record citations in separately numbered paragraphs in his responsive CSMF. LCvR 56.C.1.c. Instead, Plaintiff provided an argumentative, often immaterial, and conclusory account of the facts of the case in his brief, which Defendant could not readily address or dispute. Accordingly, the Court will discount Plaintiff's "Summary of Relevant Facts" as improper and evaluate Plaintiff's claims based solely on the facts presented in Defendant's CSMF and Plaintiff's responsive CSMF.

## B. Gender Discrimination

Plaintiff characterizes his claim as one of "gender stereotype based discrimination." (Doc. No. 57 at 23). Specifically, he argues that the "gender stereotype that women should be primarily responsible for child care" resulted in him being assigned to work overtime against his will, and ultimately, dismissed from the USPS. (See *id.* at 24). Defendant contends that Plaintiff has failed to produce any evidence that: (1) a gender stereotype existed at the APO; or (2) he was specifically harassed or punished because of his nonconformance to the alleged stereotype. (See Doc. No. 58 at 3).

"Title VII makes it unlawful for an employer 'to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin,' and discrimination based on a failure to conform to gender stereotypes is cognizable[.]" *Pagan v. Gonzalez*, 430 F. App'x 170, 171-72 (3d Cir. 2011) (citing *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 290-91 (3d Cir. 2009); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001)). As the United States Court of Appeals for the Third Circuit explained, gender stereotyping claims stem from the United States Supreme Court's decision in *Price Waterhouse v. Hopkins*,

7

490 U.S. 228 (1989), where the Court held that a woman who was denied promotion because she failed to conform to feminine stereotypes had a cognizable claim because she was discriminated against "because of sex." See *Prowel*, 579 F.3d at 290.

To prevail on a gender stereotyping claim, employees must "demonstrate that 'the[ir] harasser was acting to punish [their] noncompliance with gender stereotypes." *Id.*, 579 F.3d at 290 (quoting *Bibby*, 260 F.3d at 264). Such a claim, however, must be dismissed at the summary judgment stage if the plaintiff fails to marshal sufficient evidence such that a reasonable jury could conclude that this form of discrimination/harassment has occurred. See *id.* at 292.

Instantly, Plaintiff has presented no evidence apart from his own self-serving, conclusory, and contradicted allegations to support his claim that Postmaster Burford discriminated against him as a man with childcare responsibilities. In his Amended Complaint, Plaintiff alleges that Postmaster Burford had a "stated belief" that it was the duty of Plaintiff's wife to "alter her work schedule to care for their children *as their mother*[.]" (Doc. No. 4 at ¶ 28) (original emphasis). But the evidence properly before this Court—namely, Plaintiff's own deposition testimony—contradicts this allegation. When pressed at his deposition, Plaintiff admitted that Postmaster Burford never told him that "child rearing is a woman's job, not a male's job." (Doc. No. 46 at ¶ 84; Doc. No. 56 at ¶ 84).[4] Plaintiff also did not know or declined to comment on: (1) the origin of Plaintiff's belief that Postmaster Burford had made some statement to that effect; and (2) whether there is a perception within the APO that males with child rearing responsibilities suffer

---

[4] Plaintiff does not contest the accuracy of this deposition transcript excerpt, but his response to paragraph 84 of Defendant's CSMF is a prime example of his failure to either: (1) comply with the Local Rules regarding summary judgment; or (2) identify genuine factual disputes. Plaintiff's response begins by "[a]dmitt[ing] in part" Defendant's statement of material fact (without designating which part is admitted), before launching into multiple pages of argumentative and often immaterial assertions. (See Doc. No. 56 at 18-20). Ultimately, Plaintiff notes that his basis for inferring that Postmaster Burford discriminated against him is addressed in "the Brief" (presumably Doc. No. 57), where Plaintiff continues to speculate without factual support. In "the Brief," Plaintiff contends that gender discrimination is the "only plausible explanation" for his allegedly hostile work environment and eventual dismissal. (*Id.* at 24). A factually bankrupt hypothesis, however, is insufficient to create a genuine dispute of material fact.

8

from discrimination. (See *id.*). When further questioned on the basis for Postmaster Burford's alleged mistreatment of him, Plaintiff speculated: "I don't know any other reason for it. I mean what would be another reason for it other than his issue with the fact that a father is to work. I don't know." (Doc. No. 47-1 at 32).

Plaintiff has presented nothing but his own speculation and conclusory allegations that Postmaster Burford discriminated against him for failure to comply with a gender stereotype. Such unsupported allegations are insufficient to survive a motion for summary judgment. See *Donaldson v. Norfolk S. Ry., Co.*, No. 10-cv-1556, 2011 U.S. Dist. LEXIS 90572, *29 (M.D. Pa. Aug. 15, 2011) (granting summary judgment and dismissing plaintiffs' hostile work environment claim because they "fail[ed] to offer any evidence beyond mere conclusory, self-serving statements" to support the claim); *Podobnik*, 409 F.3d at 594 (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions" to survive summary judgment). Moreover, the evidence of record—including Plaintiff's own sworn statements—actually contradicts his allegations. Accordingly, the Court will dismiss Plaintiff's gender discrimination claim.

## C. Disability Discrimination

In the brief supporting his motion for summary judgment, Defendant advances over thirteen pages of meticulously researched and factually supported arguments to demonstrate that Plaintiff cannot establish a *prima facie* case of disability discrimination. (See Doc. No. 45 at 3-16). In stark contrast, Plaintiff's one-page response does not: (1) cite any caselaw supporting his claim;[5] (2) identify a single fact of record to support his claim; or (3) specifically address Defendant's arguments. (See Doc. No. 57 at 26). Instead, Plaintiff simply declares that he "had a

---

[5] In this section, Plaintiff's only citations to cases set forth the elements of a *prima facie* case under the RA. (See Doc. No. 45 at 25). Plaintiff provides no meaningful discussion of how the facts of this case meet that standard.

9

disability, a record of a disability and was regarded as having a disability" based on work-related stress and that "[t]here is no legitimate issue as to whether he had a disability." (See id.).[6] For the reasons discussed below, the Court concludes that Plaintiff is not disabled within the meaning of the RA and will dismiss Plaintiff's disability discrimination claim.

### 1. Disability under the RA

"The Rehabilitation Act prohibits discrimination based on disability by Government agencies (including the [United States Postal Service])." *Kondas v. Potter*, 328 F. App'x 116, 119-20 (3d Cir. 2008) (citing 29 U.S.C. § 794(a)). In assessing a disability claim under the RA, courts use the same standard as the Americans with Disabilities Act of 1990 ("ADA") for determining liability. *Fromm v. MVM, Inc.*, 371 F. App'x 263, 269 n.3 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1299 (3d. Cir. 1996)).[7]

To establish a *prima facie* case of discrimination under the ADA, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). "An individual is disabled if he has 'a physical or mental impairment that substantially

---

[6] Plaintiff's present contention that he "had a disability, a record of a disability and was regarded as having a disability" based on work-related stress is contradicted by his own interrogatory response. When previously questioned about his disability claim and any requests he made to his employer for reasonable accommodations, he responded: "Plaintiff has never had any disabilities other than not having the ability to work forced overtime or short notice." (See Defendant's CSMF, Doc. No. 46 at ¶ 82). Plaintiff's responsive CSMF notes that "[t]he Discovery responses speak for themselves." (Doc. No. 56 ¶ 82). Despite this contradiction, the Court—in an abundance of caution—will address the merits of Plaintiff's present claim that he was disabled by a stress-induced condition.

[7] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009. See ADAAA, Pub. L. 110-235, 122 Stat. 3553 (2008). However, the Court will apply the standard of the pre-amendment ADA to the instant case because the alleged discrimination occurred before the ADAAA became effective, and the ADAAA cannot be applied retroactively. See *Britting v. Sec'y, Dep't of Veterans Affairs*, 409 F. App'x 566, 569 (3d Cir. 2011) (concluding "that the ADAAA cannot be applied retroactively" and noting that other circuit courts have uniformly reached the same conclusion).

10

limits one or more of the major life activities of such individual.'" *Sulima*, 602 F.3d at 185 (quoting 42 U.S.C. § 12102(2)). Additionally, "[p]eople who have a *record of such impairments* or are *regarded as having such impairments* also fit the definition of being 'disabled.'" *Weidow v. Scranton Sch. Dist.*, No. 11-1389, 2012 U.S. App. LEXIS 2422, *11 n.7 (3d Cir. Feb. 7, 2012) (citing 42 U.S.C. § 12102(1)(B) and (C)) (emphasis added).

To succeed on a "record of impairment" claim, a plaintiff must demonstrate that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Farkas v. Carpenter Tech. Corp.*, No. 05-CV-2741, 2006 U.S. Dist. LEXIS 9170, *11 (E.D. Pa. Mar. 8, 2006) (quoting 29 C.F.R. § 1630.2(k)); *Clements v. Diamond State Port Corp.*, No. 02-259 JJF, 2004 U.S. Dist. LEXIS 19823, *13 (D. Del. Sept. 30, 2004) (citations omitted). To prevail on a "regarded as" claim, a plaintiff must show that the employer either "mistakenly believed that [the employee has] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Sulima*, 602 F.3d at 188 (citations omitted).

### 2. Plaintiff's Alleged Disability

Plaintiff's claim of disability stems from the "severe stress, anxiety, and depression" which Plaintiff allegedly suffered as a result on-the-job harassment. (See Doc. No. 4 at ¶ 18). Plaintiff further contends that his "stress disability . . . had [him] out of work from February through November 2007[,]" and that employees at the APO "imposed hurdles to his return to work designed to cause stress and cause a relapse." (*Id.* at ¶¶ 30-31). Plaintiff's physician diagnosed him as having "Depression/work related stress" and "Anxiety[.]" (Doc. No. 46 at ¶ 42; Doc. No. 56 at ¶ 42).

11

Plaintiff also acknowledges the temporary nature of his alleged condition. Specifically, he explains that his "claim of discrimination is *not* based on the fact that he had a *continuing* disability." (Doc. No. 57 at 26) (emphasis added). Moreover, he notes that he "recovered sufficiently to come back [to work] and suffer abuse" before concluding "that [the abuse] was not going to get better, without success in this legal action[.]" (*Id.*). Such admission, however, is fatal to Plaintiff's claim because "[t]ransitory, temporary or impermanent impairments are not considered an impairment that substantially limits a major life activity." *Seibert v. Lutron Elecs.*, 408 F. App'x 605, 607-08 (3d Cir. 2010) (citations omitted); *Sulima*, 602 F.3d at 185 ("A nonpermanent or temporary condition cannot be a substantial impairment under the ADA.") (citations omitted); *Hajel v. Allegheny Ludlum*, No. 2:10cv137, 2010 U.S. Dist. LEXIS 51396, *9 (W.D. Pa. May 25, 2010) ("An individual with a temporary impairment lasting only a few months will not qualify for protection under the ADA.") (citations omitted).

Recognizing this rule, Courts routinely dismiss disability claims premised on work-related stress conditions which are temporary in nature. See e.g., *Maslanka v. Johnson & Johnson, Inc.*, 305 F. App'x 848, 852 (3d Cir. 2008) (finding that "[n]o reasonable juror could conclude from the record evidence that [the plaintiff]'s impairment was permanent or would have a long-term impact" when his anxiety and depression was expected to last only so long as his supervisor continued to give him bad evaluations); *Ashton v. AT&T Co.*, 225 F. App'x 61, 66 (3d Cir. 2007) (concluding that the plaintiff's impairment—acute stress disorder and anxiety—was: (1) situational and triggered by her relationship with her supervisor; (2) of "limited duration[,]" even assuming it lasted for the sixth months plaintiff alleged; and (3) not substantially limiting); *Anderson v. Radio One, Inc.*, No. 09-194, 2010 U.S. Dist. LEXIS 99713, *25 (E.D. Pa. Sept. 20, 2010) (noting that "[c]ognitive limitations that lack long term impact and

that stem from poor evaluations from a supervisor do not exhibit the severity, permanence, and longevity necessary to establish a substantial impairment"). The same result is appropriate in the case *sub judice*. Accordingly, the Court finds that Plaintiff is not substantially limited in a major life activity due the transitory nature of his alleged condition.

Having concluded that Plaintiff is not substantially limited in a major life activity, the Court must also dismiss Plaintiff's "record of impairment" claim. See *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001) ("A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA."). Plaintiff's "regarded as" claim also fails, but for a different reason. To wit, Plaintiff has failed to explain how, or muster any record evidence indicating that, his employer either mistakenly believed that: (1) Plaintiff has "a physical impairment that substantially limits one or more major life activities"; or (2) "an actual non-limiting impairment [of Plaintiff's] substantially limits one or more major life activities." *Sulima*, 602 F.3d at 188. In fact, Plaintiff does not even mention the topic apart from simply claiming that he "had a disability, a record of a disability and was regarded as having a disability[.]" (See Doc. No. 57 at 25-26).

Because the Court finds that Plaintiff has failed to establish that he is disabled within the meaning of the RA, the Court will dismiss his disability discrimination claim and need not discuss in detail the remaining two elements of a *prima facie* case—that Plaintiff is otherwise qualified for the job and was subjected to an adverse employment decision because of discrimination. The Court will note, however, that Plaintiff does not address these two elements of his *prima face* case, much less present evidence from which a reasonable jury could find for Plaintiff on these elements. (See Doc. No. 57 at 25-26).

13

## D. Retaliation

As noted in his brief, "Plaintiff asserts her [sic] federal retaliation claim under 42 U.S.C. § 2000e-3(a)[.]" (Doc. No. 57 at 27). Defendant contends that Plaintiff has failed to meet his burden with regards to this claim. (See Doc. No. 45 at 22-25; Doc. No. 58 at 7-9). As this Court recently explained:

> [42 U.S.C. § 2000e-3(a) provides that] [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
>
> To make a *prima facie* case for retaliation under § 2000e-3(a), Plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F. 3d 383, 386 (3d Cir. 1995)).
>
> Following this initial showing, Defendant carries the burden to establish a legitimate, non-retaliatory reason for its conduct. *Moore*, 461 F.3d at 342. If Defendant makes such a showing, the burden then shifts back to Plaintiff, and requires evidence sufficient to convince a factfinder that Defendant's explanation was not only false, but also that retaliation was the true purpose behind Defendant's acts. *Id.* To survive a motion for summary judgment, Plaintiff must offer sufficient support to allow a factfinder to reasonably come to the above conclusions. *Id.*

*Lemon v. Somerset Cmty. Hosp., Inc.*, No. 3:08-cv-127, 2011 U.S. Dist. LEXIS 122045, *22-23 (W.D. Pa. Oct. 21, 2011).

Here, the Court concludes that Plaintiff has failed to establish the first and third elements of a *prima facie* case of retaliation. In an effort to satisfy the first element of his claim (engaged in protected activity), Plaintiff simply declares that he "was actively involved in an EEO process

from February 22, 2007 to the present date" and that the "first prong is met." (See Doc. No. 57 at 28). He cites absolutely no facts of record to support these conclusions, which is fatal to his claim. See *United States v. Valko*, No. 3:09-242, 2011 U.S. Dist. LEXIS 88021, *5 (W.D. Pa. Aug. 9, 2011) ("Even if a record contains facts that might provide support for a non-movant's position, the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment.") (citations and quotation marks omitted); see also *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes[.]").

With regards to the second element of his retaliation claim (adverse action), Plaintiff again declares in conclusory fashion that he was "subjected to a variety of adverse employment actions including two notices of termination[,]" and that "[t]hese amply meet the second prong." (See Doc. 57 at 28). Plaintiff does not define or provide examples of the "variety of adverse employment actions" to which he was subjected, much less identify facts of record to support such a claim. Plaintiff's passing allusion to "notices of termination" is similarly unsupported. Despite this deficiency, the Court will give Plaintiff the benefit of the doubt and presume that Plaintiff's references to two "notices of termination" were an attempt by Plaintiff to identify the two Notices of Removal discussed in Defendant's CSMF as adverse employment actions taken by Defendant. Of these two attempts by Defendant to terminate Plaintiff's employment, the first was rescinded and reduced to a fourteen-day suspension, and the second was cancelled in favor of Plaintiff's voluntary resignation from the USPS. (See Doc. No. 46 at ¶¶ 20, 74; Doc. No. 56 at ¶¶ 20, 74). Because the Notices of Removal resulted in a suspension and Plaintiff's ultimate separation from the USPS, the Court concludes that Plaintiff has identified adverse employment

15

actions—those actions "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citations omitted).

Considering the third element of his claim (causal connection), Plaintiff provides no evidence of record demonstrating a causal connection between his participation in protected activity and any adverse employment action. Plaintiff's bald allegations of retaliatory animus unsupported by properly presented facts do not suffice. (See Doc. No. 57 at 28-31). In fact, Plaintiff does not present evidence to demonstrate that those who allegedly retaliated against him were even *aware* of his participation in "an EEO process." (See *id.* at 28) (responding to Defendant's argument by stating: "While it may be claimed that decision makers were not aware of the EEO claim at the time, a reasonable factfinder could conclude that there [sic] conduct demonstrated that they were aware.").

Plaintiff has fallen well short of his obligation to state a *prima facie* case of retaliation; thus, the Court will dismiss this claim as well. As before, having concluded that Plaintiff failed to establish his *prima facie* case, the Court need not address the other steps in the *McDonnell Douglas* burden-shifting analysis: (1) Defendant's burden of establishing a legitimate, non-retaliatory reason for its conduct; and (2) Plaintiff's ultimate burden of showing that Defendant's explanation was not only false, but also that retaliation was the true purpose behind Defendant's acts. *Lemon*, 2011 U.S. Dist. LEXIS 122045 at *23 (citing *Moore*, 461 F.3d at 342). In an abundance of caution, however, the Court notes that Defendant provides ample evidence to satisfy his burden. Specifically, Defendant identifies competent record evidence demonstrating that Plaintiff was directed to work overtime as a result of vacancies and employee shortages at the APO, and that Plaintiff was slated for removal from the USPS for improper conduct and

16

failure to follow supervisors' instructions. (See Doc. No. 45 at 20; Doc. No. 46 at ¶¶ 70-73; Notice of Removal, Doc. No. 47-2). Contrarily, Plaintiff presents no evidence of record to convince a reasonable factfinder that these proffered grounds for termination were false and the true purpose was retaliation; he simply denies the allegations of misconduct and advances unsupported assertions of retaliatory animus. (See Doc. No. 57 at 28-30; Doc. No. 56 at ¶¶ 70-73). Plaintiff's mere allegations are insufficient to satisfy his burden. Thus, even if Plaintiff had stated a *prima facie* case of retaliation, the Court would nevertheless dismiss his claim because Defendant met his burden at step two of the burden-shifting framework, and Plaintiff failed to meet his ultimate burden at the third step.

## VI. CONCLUSION

For the above-stated reasons, Plaintiff has failed to establish a *prima facie* case of gender discrimination, disability discrimination, and retaliation. Accordingly, the Court will dismiss Plaintiff's claims and **GRANT** summary judgment for Defendant. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STEVEN J. KISER | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:10-22 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| JOHN E. POTTER, *Postmaster General,* | ) | |
| *U.S. Postal Service,* | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 4th day of April 2012, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 44), and in accordance with the Memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendant and against Plaintiff on all claims.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to **CLOSE** the case.

BY THE COURT:

Kim R. Gibson

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**